### *A. C. Norton v. Trustees (Montville Tp.).

1. VOTE NOT NECESSARY TO ACQUIRE ADDITIONAL LAND FOR CEMETERY.

   The requirement of a popular vote for "cemetery or no cemetery," under sec. 1465, Rev. Stat., does not apply to acquiring additional ground for an existing cemetery.

2. LAW OF 1893 DOES NOT AUTHORIZE SUCH ADDITIONAL LAND WITHIN PRESCRIBED DISTANCE FROM DWELLING.

   The local law of 1893 (90 O. L., 183) authorizing a township to add land to its cemetery, did not, by implication, authorize it to add land within 200 yards of a dwelling.

3. SAME RULE AND REMEDY APPLIES TO ADDITIONS TO A CEMETERY AS TO ITS ORIGINAL ESTABLISHMENT.

   The same rule and remedy applies to land for an addition to a cemetery as provided by sec. 1464, Rev. Stat., relative to land for cemeteries.

4. SPECIAL ACT FOR A PARTICULAR TOWNSHIP TO USE LAND FOR A CEMETERY IS VALID.

   A special act to authorize a particular township to use land for a cemetery, which the general law would forbid being so used, is local in its nature, and, hence, valid.

5. PROPERTY OWNER HAS VESTED RIGHTS IN THE PROHIBITION AGAINST LOCATING A CEMETERY WITHIN 200 YARDS OF HIS DWELLING.

   The prohibition against locating a cemetery within 200 yards of a dwelling, sec. 1464, Rev. Stat., confers on the owner of the dwelling a vested right in the nature of an appurtenance which cannot be taken away by repeal after he has begun an injunction suit.

6. A LAW ESTABLISHING A CEMETERY WITHIN 200 YARDS FROM A DWELLING WOULD BE VOID UNLESS IT PROVIDED COMPENSATION.

   While the general assembly might authorize the establishment of a cemetery within the prohibited distance of a dwelling, such a law would be void as against the owner of a dwelling unless it provided compensation in money for the depreciated value of the dwelling.

APPEAL from the Court of Common Pleas of Geauga county.

LAUBIE, J.

This case came into this court on appeal, and was brought by the plaintiff to restrain the defendants from laying out and establishing an addition to the present township cemetery within two hundred yards of the plaintiff's dwelling-house, on land bought by the defendants for that purpose, and which, it is conceded, the defendants intend to and will do, unless restrained by order of the court.

The contemplated addition abuts on the west line of the county road, and lies between the plaintiff's premises and the north line of the cemetery; and the whole addition is within two hundred yards of plaintiff's dwelling-house.

Sections 1464 and 1472, Rev. Stat., prohibit township trustees from appropriating lands within two hundred yards of a dwelling-house for a cemetery, or

---

*This decision was affirmed by the Supreme Court in 54 O. S., 682, unreported.

for any addition thereto, and this inhibition applies as well to a purchase as to an appropriation of such lands for such purposes, and the owner of a dwelling-house may enjoin such trustees from locating a cemetery, or an addition thereto, within such prohibited distance. *Henry* v. *Trustees*, 48 O. S., 671.

It is evident, therefore, that the plaintiff is entitled to the injunction asked, unless the defendants can show some superior right, or other valid defense—both of which they claim to have, first, by virtue of an act of the general assembly passed February 23, 1893, and secondly, by way of estoppel.

As to the latter—the estoppel—the evidence does not sustain the claim, and we dismiss it without further comment.

The act of February 23, 1893, upon which the first and principal claim of the defendants is based, was published by the secretary of state as a local law, 1893, 90 O. L., 183, with the word "Montville" (the name of the township) in brackets, to indicate its application, and the body of the act is as follows:

"Township trustees of any township in the state which had at the last federal census a population of not less than 690, or may have at any future census a population of not more than 695, are authorized to occupy and use for cemetery purposes, any land that has been bought by said township trustees for cemetery purposes, any act that has heretofore been enacted, notwithstanding."

The land in question was bought by the defendants before the passage of this act, and, by reason thereof, the defendants claim they are authorized to use such land for the purposes aforesaid, and that the plaintiff has no standing in court, and is not entitled to the injunction asked for.

It is contended for the plaintiff that the purchase of this land was illegal, because the question was not submitted to a vote of the electors of the township under sec. 1465, Rev. Stat., and that the act of February 23, 1893, applies only to a case of a legal purchase.

We are of the opinion that the provision of sec. 1465, requiring the question of "cemetery or no cemetery," to be submitted to a vote of the electors of the township, has no application to the acquisition of lands for the extension of the area of a cemetery already established according to the requirements of such section.

Is this act of February 23, 1893, in contravention of sec. 26, of Art. II, of the Constitution of the state, which provides that "All laws of a general nature shall have a uniform operation throughout the state?" It is evident that this act could not have such operation. It was clearly designed to apply to townships whose trustees had bought land for cemetery purposes which they could not legally use for such purposes, as otherwise the act was superfluous and useless; and therefore it could not apply to all townships of the enumerated population, but only to such of those of the enumerated population, whose trustees had bought such lands, but which they could not use for such purposes. The classification, therefore, is as illegal as that passed upon in *Costello* v. *Wyoming*, 49 O. S., 202. However, we are disposed to think that, although relating to a general subject, the act is local in its nature, as much so at least as an act for the creation of a school district within the limits of a township, by special act, which was held to be in its nature local. *State* v. *Shearer*, 46 O. S., 275; and that it is not in conflict with the provision of the Constitution referred to.

But however this may be, the rights of the plaintiff had fully vested under sec. 1464, and he had commenced his action before the passage of the act in question; and sec. 79, Rev. Stat., provides:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal. * * * Nor shall any repeal or amendment affect causes of such actions, prosecutions or proceedings existing at the time of such amendment or repeal, unless otherwise expressly provided for in the amending or repealing act."

Now, if the act in question, of February 23, 1893, 90 O. L., 183 is to have any effect whatever as against the plaintiff, it must be by way of appeal of sec. 1464,

Rev. Stat., in that to have effect against him, it must be construed to authorize the trustees to use land for cemetery purposes within two hundred yards from his dwelling-house. Against that, his property, himself and his family were protected by the express provision of said sec. 1464, and that provision vested in him an important and valuable right.

In *Henry* v. *Trustees, supra*, in passing upon this provision of such section, it is said, p. 674: "The design of the clause in question is to guard the comfort, the health and the lives of the people. *Per se* a cemetery is not a nuisance, but this act carries the implication that, in the judgment of its framers, the locating of a cemetery nearer than two hundred yards from a dwelling-house is a thing to be prohibited. The tendency to injure the value of property and to impair the health of the inmates, if placed too near, is a matter of common knowledge."

A right secured to the citizen by statute is as sacred and invulnerable from attack as any other; and such right is not affected by the repeal of such statute, as is provided in said sec. 79. *State* v. *Purcell*, 31 O. S., 352, 358.

Indeed, such right would be protected by the special provision of the Constitution, sec. 19, Art. I, which declares that private property shall ever be held inviolate.

It is true, the legislature may authorize its appropriation to a public use, but at the same time a means of compensating the owner in money must be provided; and such means are not provided in the act in question. A destruction, in whole or in part, of the value of the plaintiff's property, is as much an appropriation of his property as the taking of the property itself would be.

But it is more than doubtful, whether the legislature undersood that the act in question was designed to authorize the trustees to use land for cemetery purposes within two hundred yards of the plaintiff's or any citizen's dwelling-house, without his consent, and to annul to that extent sec. 1464, Rev. Stat. Neither in express terms, nor by necessary implication, does that act confer such right upon such trustees. Was the legislature informed that the trustees had exceeded their authority, and had bought land for cemetery purposes, in violation of the inhibition of such section? The act itself, on its face does not convey such information. It seems to relate to land properly and legally acquired by the trustees, but which they could not use for cemetery purposes, by reason of some supposed impediment, which is not named. In the absence of words expressing or necessarily implying such intent, the inference should not be drawn that the legislature intended to legalize a purchase that had been made in direct violation of statutory law. That deception was resorted to in the matter is made manifest in regard to the signature of the plaintiff to the petition to the legislature for the passage of this act, as developed on the trial of the estoppel claimed by the defendants, as heretofore adverted to. The facts are clear that the plaintiff signed the petition, believing that the bill referred to other land which the trustees had been negotiating for, and that within an hour thereafter he asked permission to withdraw his name therefrom, and did then do so by drawing pencil or ink lines directly through his signature; and these lines were afterward erased by some one, without the knowledge or consent of plaintiff, so that his name appeared as one of the signers of the petition.

To that extent the legislature was put in possession of the ulterior design of the act in question, and how far the name of the plaintiff, thus fraudulently restored to the petition therefor, was used in securing its passage, are left to conjecture.

If, however, the legislature was put in possession of such design, it is not at all difficult to imagine what use was made of the fraudulently restored name of the plaintiff to the petition.

The injunction, as prayed for, will be granted.

*Metcalf & King*, for plaintiff.

*Bostwick*, for defendant.